## HERRINGTON and wife vs. BUDD.

A grant in fee reserving rent, with a clause of re-entry, is a revocation of a prior devise of the same lands made by the grantor.

Under the former statute of wills a rent, reserved upon a grant in fee, did no pass by a devise of the land out of which the rent issued, *as land.*

Otherwise of rents reserved on a lease for a term of years: such rents and the reversion would pass by a devise of the land.

A right of re-entry for the breach of a condition contained in a grant in fee re serving rent, does not pass by a devise of the premises *as land.*

EJECTMENT for an undivided part of the north half of lot number 13 in a tract of 5029 acres in Charlton, Saratoga county, tried at the circuit for that county held in December, 1845.

Ryer Schermerhorn and John Glen being seized in fee of lands in that tract, including the premises in question, as tenants in common, the former on the 8th day of August, 1792, duly made and published his last will and testament, by which he devised the lands in the tract in question to his six sons and daughters for life, and after their death one-sixth part of said land to the children of each of his sons and daughters in fee. The testator died in 1793, leaving the devisees for life surviving. One of the sons died between 1794 and 1797, without issue. Jeremias Schermerhorn, another of the sons of the testator, died in 1836, leaving eight children, of whom Maria, the wife of the plaintiff Herrington, is one. It was in her right that the plaintiffs sought to recover.

The defendant proved that on the 26th day of September 1775, Ryer Schermerhorn and John Glen leased the said premises in fee to John Kemp, reserving, after the first seven years, an annual rent of £6, New-York currency. There was a reservation to the lessors of a right to re-enter for non-payment of rent and for the non-performance of certain covenants, and of the privilege of erecting mills upon any stream on the premises and of cutting logs, and also of egress and regress. On the counterpart of the lease produced, there was an endorsement signed by Glen, admitting the receipt of £16 for rent from

John Campbell. It was without date, but was written under an endorsement purporting to be an assignment from Ann Kemp to Campbell, dated October 24, 1788, but which was not proved. The defendant also proved that on the 13th of October, 1789, Glen conveyed an undivided half of the premises to John Campbell in fee, and that on the 14th day of February, 1793, Ryer Schermerhorn leased an undivided half thereof in fee to the same John Campbell, subject to an annual rent, with a clause of re-entry. No further account was given of the former lease. On the 22d day of February, 1794, Campbell assigned his lease to Frederick Valentine, and he also conveyed to Valentine, by deed in fee, an undivided half of the premises, the date of which last mentioned conveyance is not stated in the bill of exceptions. On the 10th day of March, 1797, the surviving children of Ryer Schermerhorn, including Jeremias, the father of the plaintiff Maria Herrington, released and conveyed in fee to Valentine an undivided half of the premises, with covenants against their own acts. Valentine subsequently conveyed the whole premises in fee to A. Spring, under whom the defendant was in possession.

The defendant's counsel insisted that the lease in fee from Ryer Schermerhorn to John Campbell, was a revocation of the will of Schermerhorn, so far as it affected the premises in question; that the rent reserved by that lease descended to the heirs of R. Schermerhorn and was released by their deed to Valentine. The circuit judge declaring himself to be of that opinion nonsuited the plaintiff, who excepted. There was a stipulation annexed to the bill of exceptions, in which it was agreed that either party might rely upon any point arising upon the evidence, though not made the subject of an exception on the trial.

*H. V. D. Van Epps,* for the plaintiffs.

*W. Hay,* for the defendant.

*By the Court,* McKissock, J.   The plaintiffs having made their title in the first instance through the will of Ryer

Schermerhorn, the principal inquiry is, what was the force of the defence set up by the defendant? If the lease in fee made by Schermerhorn to Campbell in 1793, after the will, was a revo-' cation of the devise of the premises mentioned in that lease, then the lands in question, or rather the rents issuing therefrom, together with the power to enter for condition broken, descended to the heirs at law of R. Schermerhorn; and the defendant having produced a deed in fee simple from them to Valentine, under whom the defendant claims, made a perfect defence to the action. It is true, that leases for years, mortgages or conveyances in trust for the payment of debts, and then in trust for the benefit of the grantor, are revocations of a will only *pro tanto*. To that effect are the authorities cited by the plaintiffs' counsel. (*Livingston* v. *Livingston,* 3 *John. Ch. R.* 148, 156; *Parsons* v. *Freeman,* 3 *Atk.* 741; *Lambert* v. *Parker,* 2 *Ver.* 495; *Adams* v. *Winne,* 7 *Paige,* 99.) But any alteration of the estate by the testator, or of his interest therein, or any modification of it which converts it into a different estate from the one the testator had at the time of the devise, even though the testator take back the estate in an altered condition by the same instrument, is a revocation of a will or devise. (4 *Kent,* 528, 4*th ed.; Parsons* v. *Freeman, supra; Goodtitle* v. *Otway,* 1 *Bos. & Pull.* 576; 7 *Term R.* 399; *Powell on Devises,* 565 *to* 570.) So strict was the law in this respect that even a contract to sell, was, in this state, prior to the revised statutes held to be a revocation in equity. And at this time a conveyance of the estate devised is held a revocation of a previous devise of the same premises, though the testator take back a mortgage for the whole purchase money. (*Adams* v. *Winne, supra.*)

In the present case, there was not a change or modification of the estate or interest of the testator merely, but he divested himself of the whole title to the land, and it passed to the lessee without qualification, subject only to the contingency of the conditions being broken. This was manifestly a revocation of the previous devise of the same lands.

But there is, I apprehend, another objection to the plaintiffs'

right of recovery under the will of Ryer Schermerhorn. At the time of the execution of that will, the premises in question were undoubtedly held under the lease in fee, executed in 1775, by Schermerhorn and Glen to Kemp. Schermerhorn, therefore, at that time held no other interest in the property than the rents reserved and the contingent right of entry for a condition broken. That this was considered the condition of the title, is apparent from the receipt for rent given by John Glen to Campbell, which was at the foot of the assignment of the old lease by Ann Kemp to Campbell, bearing date in October, 1788; and from the fact that in 1789 Glen conveyed his undivided interest in the premises to Campbell. The statute of 1787, in force when this will was made, provided that any person seized of an estate of inheritance in any lands, rents or other hereditaments, in possession, reversion or remainder, might devise the same. (1 *K. & R.* 178, § 1.) The words used of the devise under which the plaintiffs claim are, " I give, devise and bequeath my *two hundred and fifty acres of land* part of the five thousand acres," &c. without any other words, to indicate an intention to devise rents or other hereditaments. Though the clause is spoken of in the bill of exceptions, as a devise of the premises in question, this should not control the legal operation of the words used. Although a devise of lands may carry with it the rents and reversion dependent on a term for years, and a devise of rents and profits is a devise of the lands, still it does not follow that a devise using the word " land," and no other to designate the subject of it, will pass rents reserved on a lease in fee. This is especially so where the testator had other lands answering the description in the will, which he held at the time in fee simple, as was the case here. Neither can a devise describing the thing intended by the word " land," be held to apply to and include lands leased as these were, in fee simple, in respect to which the testator had no estate, and in regard to which he had no interest, except in the conditions on which the lands were held. It would therefore appear that by no legal interpretation can the will of Ryer Schermerhorn be said to dispose of either the lands for

which this suit is brought, or the rents, or other hereditaments connected therewith.

But if it be said that by a devise of the land, the right of entry under the condition annexed to the fee passed ; the answer is that the testator had no estate in the land, until the condition was broken and until a re-entry ; and that the estate or interest in a condition annexed to an estate in fee simple, granted on condition, is not devisable. (*Powell on Devises,* 234.) "A right of entry for condition broken, or under the warranty annexed to an exchange, is not devisable, nor is the benefit of a condition unless annexed to a reversion." (2 *Preston on Abstracts,* 204; 4 *Kent's Com.* 510, *4th ed.*) In the present case, the idea of a condition or right of entry connected with a reversion is excluded, the demise being in fee. Nor is the present case like possible contingent interests, such as executory devises and springing contingent executory uses, which are devisable. (*Jones* v. *Roe,* 3 *Term Rep.* 94; *Powell on Devises,* 35, 233, 234.) In those cases, the testator devises all the interest he originally had ; in the present he has, before the will made, divested himself of all estate, and cannot be re-invested except by entry for condition broken. (*See the remarks of Lord Ellenborough in Goodright* v. *Forrester,* 8 *East,* 567.) Nor does it come within the reason of the case of *Jackson* v. *Varick,* (7 *Cowen,* 238.) That case went a great way, but it only determined that a testator might devise lands, to which he had title and a right of entry, though they were held adversely. I therefore conclude that notwithstanding his will, all the interest of Ryer Schermerhorn in the premises and in the rents vested in his heirs at law, without regard to the question of an implied revocation by the subsequent demise. In either case, the plaintiff was rightly nonsuited.

New trial denied.