# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

---

### JACKSON vs. MIDDLETON.

A contingent remainder is not subject to levy and sale on execution.
The statute is not broad enough to include future estates in expectancy among
those estates or interests in land which may be sold on execution.

THIS was an action to compel the determination of the
defendant's claim to land in Brooklyn. On the first
trial, before J. F. BARNARD, J. the defendant recovered a
judgment declaring that he was the owner of the land
claimed by him, and in possession of the plaintiff. The
plaintiff appealed.

The following facts were in evidence and were found
by the judge who tried the cause:

In 1832, Samuel Jackson was seised of a tract of land
in the city of Brooklyn, called the hay scale farm, includ-

ing the premises in question, and conveyed the same to John Jackson, for and during his natural life, and after his death, then to his heirs and their assigns forever. The deed contained a covenant for further assuring the title to the premises to the heirs of John Jackson "after his natural life;" and the grantor warranted the premises to John Jackson "for and during his natural life," and then to his heirs and their assigns. John Jackson then had thirteen children. One of them died prior to 1844, and in that year John Jackson executed a deed, without covenants, purporting to convey the whole tract of land to his twelve surviving children, describing them as his children and heirs presumptive. One of these children died before 1848, and in that year John Jackson and wife executed a deed, with full covenants, purporting to convey the whole farm to his surviving children, of whom the plaintiff is one. Both these conveyances refer to the deed from Samuel Jackson. In 1848, the grantees in the last mentioned deed, undertook to partition among themselves the whole tract conveyed by Samuel Jackson, and executed two sets of partition deeds, the first of which was in question in *Moore* v. *Littel,* (*see the statement of facts in that case,* 40 *Barb.* 488.) The second set of partition deeds is that in question in this action, and differs materially from the first. The deeds recite minutely the prior conveyances and the foregoing facts, and contain a special covenant of quiet possession, but no warranty. It does not appear that any of the parties entered into possession under these last mentioned deeds. In 1851, a judgment was recovered against Parmenus Jackson; and September 4, 1856, the sheriff of Kings county, under this judgment, undertook to sell his interest in sixty-four lots, for $3 per lot, to H. T. Moore. These lots formed a part of the tract conveyed by Samuel Jackson. In 1857, the under sheriff executed a deed, purporting by virtue of this judgment and the execution and sale thereunder, to convey to Moore the

estate in these lots of which Parmenus Jackson was "seised or possessed," at the recovery of the judgment; or at any time afterwards. Moore, in 1859 and 1860, conveyed to the defendant the lots claimed by him in this suit.

Fanny Jackson, one of the children of John Jackson, and one of the grantors in the partition deeds, married in 1849, and died in 1859, leaving one child, *Fanning* Baldwin, her surving. John Jackson died in 1861, leaving him surviving ten children and the said Fanning, his heirs at law.

In 1862, an action was commenced in this court to which these heirs were all parties, to partition between them the tract conveyed by Samuel Jackson, and the judgment entered in 1863 allotted to Parmenus Jackson the lots in question in this suit with others. Neither the defendant nor Moore, his grantor, were parties to this suit.

*J. Greenwood, F. J. Fithian* and *Everett P. Wheeler*, for the plaintiff. I. Under the decision in *Moore* v. *Littel*, (40 *Barb.* 488; 3 *Am. Law Reg. N. S.* 144,) the remainder limited by the deed from Samuel Jackson to the heirs of John Jackson was contingent. Until his death it was unknown and uncertain what persons would be his heirs and entitled to take. The interest of the plaintiff during his father's life was contingent on his surviving his father, and did not vest or accrue till the death of the latter. Until that event, he had no present interest. He was not an heir.

II. Such a remainder is not descendible. If the plaintiff had died before his father, his interest would have been extinguished. It does not therefore come within the definition of an expectant estate in 1 *R. S.* 725, § 35. A possibility coupled with an interest is descendible and devisable. (*Roe* v. *Griffiths,* 1 *W. Black.* 605. *Moore* v. *Hawkins,* 2 *Eden,* 342. 1 *Rob. on Wills,* 212. 4 *Kent's Com.* 510.) But this was a mere naked possibility without an interest,

not assignable or releasable, except perhaps to the tenant in possession. (*Fearne on Remrs.* 371. 3 *Prest. Abst.* 5, 6. 2 *id.* 95, 96, 205. *Jackson* v. *Waldron,* 13 *Wend.* 178, 196. *Lampet's Case,* 10 *Coke,* 51 *a.* *Doe* v. *Tomkinson,* 2 *Maule & Sel.* 165.)

III. Such an estate is not subject to levy and sale on execution. It is neither "lands, tenements or hereditaments." (*Code,* §§ 282, 289, 462. *Striker* v. *Mott,* 28 *N. Y. Rep.* 82. See *Striker* v. *Mott,* 2 *Paige,* 387; *Harris* v. *Murray,* 28 *N. Y. Rep.* 574.) This was well settled at common law. (3 *Preston Abst.* 352. *Greenleaf's Note to Cruise's Dig.* 42, vol. 1, *Greenl. ed.* 517. *Allstons* v. *The Bank,* 2 *Hill S. C.* 235.)

IV. Equity might enforce a contract for an adequate consideration to convey such a possibility. (*Edwards* v. *Varick* 5 *Denio,* 664, 690. 2 *Story's Eq.* § 1040, *c. d.* § 1021. *Pope* v. *Whitcombe,* 3 *Russell,* 124. *Whitfield* v. *Fausset,* 1 *Ves. Sen.* 387.) But equitable interests, even though the *cestui que trust* is in possession claiming to be the owner in fee, are not subject to sale on execution. (*Brewster* v. *Striker,* 2 *Comst.* 19. *Sage* v. *Cartwright,* 9 *N. Y. Rep.* 49. *Griffin* v. *Spencer,* 6 *Hill,* 525. *Scott* v. *Scholey,* 8 *East,* 467.) Neither judgment nor execution would bind choses in action or estates at will or sufferance. (*Bigelow* v. *Finch,* 17 *Barb.* 394.) All these interests are more substantial than that of the plaintiff in these premises at the time of the sheriff's sale.

V. Any interest in the covenants of title in the partition deeds which the plaintiff might have had, did not pass by the sheriff's deed. It was a mere chose in action. (*Denton* v. *Livingston,* 9 *John.* 96. *Bogert* v. *Perry,* 17 *id.* 350.)

VI. All that the defendant can claim is that the statute, (1 *R. S.* 735, § 35,) authorizes persons having such possibilities or expectancies to devise them, and, if they can find a purchaser, to sell them; and that if this expectancy afterwards ripens into a right, it enures to the benefit of

the vendee or devisee. But the statute as to judgments, (2 *R. S.* 359, § 3,) provides that judgments shall be a charge only upon the lands, tenements, real estate and chattels real, which the judgment debtor has "at the time of docketing the judgment," or which he shall thereafter (during the existence of the judgment) acquire." The statute of alienations may authorize him to sell what he expects to have, but the statute as to judgments, only authorizes a sale of what he actually has. This was the estate for the life of John Jackson, which passed by the sheriff's deed, and when he died, the estate conveyed expired.

*D. P. Barnard,* for the defendant. I, The plaintiff's exception to the reception of the judgment roll in partition was not well taken. That judgment was proper evidence to show that the title of Fanning Baldwin to one eleventh of the premises was extinguished. The plaintiff, in his notice, claims title by virtue of that judgment.

II. The title to the premises in question was considered by the court, and determined in the case of *Moore* v. *Littel,* (40 *Barb.* 488.) It was there held that by virtue of a foreclosure sale, the present and expectant estate of Parmenius Jackson became vested in the purchaser; but that Fanning Baldwin's interest in the premises remained unaffected. We claim the same benefit under an execution sale. (*Sweet* v. *Green,* 1 *Paige,* 473. *Kellogg* v. *Wood,* 4 *id.* 578.)

III. By the judgment in partition the right of Fanning Baldwin to the premises became extinguished, leaving no claimants to the premises in question but the plaintiff and defendant in this action. Had the defendant been made a party to that partition action as the grantee of the plaintiff, the premises in question would have been adjudged to the defendant. His not being made a party does not affect his rights, nor add any rights to the plaintiff. The title adjudged to the plaintiff enures to the benefit of any

Jackson *v.* Middleton.

person claiming the estate by or through the plaintiff. (*Wood* v. *Seely*, 32 *N. Y. Rep.* 116.)

*By the Court*, J. F. BARNARD, J.   It was decided by this court, in *Moore* v. *Littel*, (40 *Barb*. 488,) that the children of John Jackson, during his lifetime, had an alienable contingent estate in remainder in the lands in question in this action ; that such children, at the death of their father, took a fee simple as purchasers under the deed from Samuel Jackson to John Jackson.   The court at circuit fell into an error in supposing that an estate in expectancy, which could be aliened, might also be sold on execution. The statute is not broad enough to include future estates in expectancy among those estates or interests in land which may be so sold.   The statute in reference to the lien of judgments and lands sold thereunder by the sheriff, charges such judgments only on lands, tenements, real estate and chattels real, and directs the sale of only such estates by the sheriff.   The sheriff's deed, therefore, conveyed no interest which continued after the death of John Jackson.   The judgment should be reversed, and a new trial granted, costs to abide the event.(*a*)

[ORANGE GENERAL TERM, September 10, 1866.  *Scrugham, Lott, J. F. Barnard* and *Gilbert*, Justices.]

(*a*) This action was tried a second time, before GILBERT, J. at the Kings circuit, October 10, 1866, and judgment was rendered, declaring that the plaintiff was seised of the lots in question, discharged of any right, title or interest in the defendant.  This judgment was affirmed at the general term of the court, in the second district, in February, 1867.  No appeal to the Court of Appeals was taken.