LEON V. WALKER, Administrator de bonis non of Estate of
Emma S. Schoppee

*vs.*

PORTLAND SAVINGS BANK.

Çumberland.    Opinion May 11, 1915.

*Administrator De Bonis Non.    Agreed Statement of Facts.    Deposits.    Executor.
Executor De Son Tort.    Facts.    Forged Order.    Payment.*

An action on the case brought by the administrator de bonis non of Emma
Schoppee, deceased, for the recovery of one thousand dollars alleged to have
been paid by it to one E. and charged to the deposit of decedent upon the forged
order of decedent.

E. was subsequently appointed administrator of decedent's estate and duly quali-
fied as such.

*Held:*

1.   That E. did not deal with defendant bank as executor de son tort and that it
had no reason to believe him such.

2.   That payment to one who seeks it, not as a representative of the estate but as
an individual with pretended rights against the estate, which induce the pay-
ment, is not legalized as to the party making the payment by a subsequent
appointment of the wrong-doer as administrator.

3.   That, while it may be true that the administrator de bonis non is bound by
the acts of his predecessor lawfully performed within the scope of his duties,
it has never been held that he is affected or prejudiced by such as are fraudu-
lent or illegal.

4.   By Chap. 193, Public Laws of 1903, the authority of an administrator de
bonis non was extended and it was made his duty to collect from his predecessor
or his heirs, etc., and from all other sources, all the property and assets of the
estate of the deceased, including the proceeds from the sale of real estate, not
already distributed.

On report.    Judgment for plaintiff for the sum of one thousand
dollars with interest as claimed in plaintiff's specifications in his writ.

This is an action on the case by plaintiff as administrator de bonis non of Emma S. Schoppee, deceased, to recover one thousand dollars claimed to have been paid by the defendant to one Arthur G. Eaton and charged against the deposit of said Schoppee.

Plea, general issue and brief statement. At the January term of Supreme Judicial Court, 1914, this case was reported by agreement of parties to the Law Court for determination of the rights of the parties upon writ, plea and agreed statement of facts.

The case is stated in the opinion.

*Libby, Robinson & Ives,* for plaintiff.

*Ardon W. Coombs,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

BIRD, J. The administrator de bonis non of Emma S. Schoppee, deceased, brings this action of the case against the defendant bank for the recovery of one thousand dollars alleged to have been paid by it to one Arthur G. Eaton and charged against the deposit of said Emma S. Schoppee. The action is here upon report upon the agreed statement of the parties.

Upon the facts agreed, it is manifest that the defendant made the payment or transfer under such circumstances as to render it liable to the depositor herself, had she been alive at the time of payment. *Ladd* v. *Savings Bank,* 96 Maine, 510, 518; *Bourgeois* v. *Penobscot Savings Bank,* 107 Maine, 526. The defendant does not contend otherwise.

The transfer upon the forged order of deceased, made payable to the order of Eaton, to Ephraim Schoppee the appointee of Eaton, was made upon the eleventh day of April, 1910, and on the same day Eaton deposited the bank book issued in the name of Ephraim Schoppee with the Fidelity Trust Company accompanied by an order for one thousand dollars purporting to be signed by Ephraim Schoppee, whose signature was forged by Eaton, upon defendant as security for the payment of his, Eaton's, note for like amount payable May 16, 1910. On the 18th day of April, 1910, Eaton was appointed, and qualified as administrator of decedent.

But defendant bank claims that Eaton in so receiving payment of the sum of one thousand dollars was acting as executor *de son tort*

and that its act, as well as his, was legalized and validated by his subsequent appointment as administrator of Emma S. Schoppee and that its payment to him binds her estate. See *Pinkham* v. *Grant*, 78 Maine, 158.

An executor de son tort is one who derives no authority from the testator, but who assumes the office by virtue of his own interference with the estate of one deceased. He intrudes himself into the office without lawful authority. Such intermeddling, or intrusion, is in effect holding out one's self as executor, and authorizes the conclusion that he hath the will of deceased wherein he is named as executor, but has not yet taken the probate thereof. *Hinds* v. *Jones*, 48 Maine, 348, 349. An executor de son tort is a person, who without any authority from the deceased or the Ordinary, does such acts as belong to the office of an Executor or Administrator. 2 Bac. Abr., 387. An executor in his own wrong is one who wrongfully intermeddles with the goods of the deceased, or does any other act characteristic of the office. *Allen* v. *Hurst*, 120 Ga., 163. The slightest circumstance may make a person executor *de son tort* if he intermeddles with the assets in such a way as to denote an assumption of the authority or an intention to exercise the functions of an executor. Demanding payment of debts due to the deceased, paying the deceased's debts, carrying on his business, disposing of his goods, may make a person executor de son tort, but setting up a colorable title to the deceased's goods is not enough. 14 Halsbury, 147-148.

And in discussing the acts of the executor, named in a will, which will prevent his afterwards refusing to prove the will, it has been said "But if an executor seizes the Testator's Goods, claiming a Property in them himself, tho afterwards it appears that he had no right, yet this will not make him Executor; for the claim of property shows a different view and Intention in him, than that of administering as Executor." 2 Bac. Abr., 406.

Again it has been stated that an executor de son tort is a person who without authority intermeddles with the estate of a decedent and does such acts as properly belonging to the office of an executor or administrator, and thereby becomes a sort of quasi-executor, although only for the purpose of being sued or made liable for the assets with which he has intermeddled. 18 Cyc., 1354.

To constitute intermeddling, the person sought to be charged as executor *de son tort* must take possession or some control of property

belonging to the decedent; without this the performance of acts which are in their nature such as an executor or administrator would do cannot make one an executor *de son tort.*

An agent sold goods of an intestate in his lifetime and collected the purchase money after his death. It was held that he was not an executor de son tort, even as to creditors, because his right to collect was colorable which gives character to the transaction, as showing that it was not done as executor or as an officious intermeddler. *Outlaw* v. *Farmer*, 71 N. C., 31, 34.

In *Parker* v. *Kett,* speaking of stewards de facto, Holt, C. J., says "and this is agreeable to the reason of the law in other cases, as a legal act done by an executor de son tort will bind the rightful executor, 5 Co., 30b., and yet he is but an *executor de facto* and if the rightful executor shall bring trover against him, he shall recover only so much in damages, as he has administered unduly; and the reason is, because the creditors are not bound to seek farther than him who acts as executor." 1 Ld. Raym., 658, 661.

How far he is bound, in his character of rightful administrator by his own acts done while executor de son tort, may be a question, but it is certain that he can ratify and make valid, by relation, all those acts which would have been valid, had he been the rightful administrator. *Outlaw* v. *Farmer*, 71 N. C., 31, 35; *McClure* v. *The People*, 19 Ill., App. 105, 107.

Generally speaking, all lawful acts done in the professed administration of the estate by a person purporting to act as executor, which a rightful executor would have been bound to perform in due course of administration, bind the estate. But where the alleged executor does one single act only of an administrative character, that act is not binding on the estate. To render an act binding it must be shown that at the time in question the executor de son tort was acting in the character of an executor; 14 Halsbury, 149.

In light of the foregoing we are unable to hold that Eaton dealt with the defendant as executor *de son tort* or that the defendant had reason to believe him such. See *Smith* v. *Porter*, 35 Maine, 287, 291. He produced, what purported to be the written order upon the bank of the decedent. It was payable to him individually and in no representative capacity. If genuine, it must have been executed and delivered before the decease of decedent, payable by statute within thirty days after her decease. In no sense can it be held that Eaton

thus appeared to defendant or could be viewed by it as one collecting and receiving payment of assets of the estate but rather as one receiving a sum transferred to him by decedent in her lifetime and no longer part of her estate. Such being the case, it must follow that while he, having possession of the funds, might have been charged with them in his representative capacity after his appointment as administrator, we cannot assent to the proposition that his appointment legalized or validated the payment of the bank to him under the circumstances. The doctrine of validation by subsequent appointment was adopted, at least, originally to relieve the executor *de son tort* from the suits of creditors.

And while we conceive it to be true that little more than the reception of assets of an estate may be needed to constitute one an executor de son tort as to creditors, something more than the payment alone of assets of an estate even if required to constitute one an executor de son tort with the result that the payment is legalized and validated by his subsequent appointment as administrator. In other words payment to one who seeks it, not as a representative of the estate but as an individual with pretended rights against the estate, which induce the payment, is not legalized as to the party making the payment by a subsequent appointment of the wrong-doer as administrator. See *Lee* v. *Chase,* 58 Maine, 432, 435. *Hodge* v. *Hodge,* 90 Maine, 505, is relied upon by defendant as conclusive. It is, however, but authority for the position that, as the law then was, an administrator de bonis non could not recover of the representative of the deceased administrator assets of his decedent received before appointment but administered in whole or in part. It is not, however, authority to the effect that such administrator de bonis non might not bring his action against one who improperly and illegally made payment of assets to an executor *de son tort* although the latter be later appointed administrator.

While it may be true that it is now law that the administrator de bonis non is bound by acts of his predecessor lawfully performed within the scope of his duties, it has never been held that he is affected or prejudiced by such as were fraudulent or illegal. See *Woolfork's Admr.* v. *Sullivan,* 23 Ala., 548; 58 Am., Dec. 305, 307.

By the amendment of 1903, (Public Laws, Chap. 193) the authority of an administrator de bonis non was extended and it was made

his power and duty to collect from his predecessor or his heirs, etc., and from all other sources, all the property and assets of the estate of the deceased, including the proceeds from the sale of real estate, not already distributed.

> *Judgment for plaintiff for the sum of one thousand dollars with interest as claimed in plaintiff's specifica- tion in his writ.*