STOYER and others *vs.* EYCLESHIMER and others,

The right which an heir apparent possesses in the estate of his father, during the lifetime of the latter, is a bare possibility coupled with no interest, and is therefore not the subject of a grant.

Although no present or immediate estate or interest will vest in the grantee by virtue of an instrument purporting to convey the grantor's interest in his father's estate, executed during the father's life, yet if made *bona fide* and for a valuable consideration, such an instrument may be regarded as a *contract*, which a court of equity will protect and enforce after the father's death, as against the claims of the grantor's creditors.

J. E., during the lifetime of his father, J. P. E., for the purpose of securing the payment of a *bona fide* debt due to S., executed an instrument by which he constituted and appointed S. his attorney irrevocable and coupled with an interest, to ask, demand, sue for and recover all such interest, estate, property and effects, real and personal, as he *then had*, or *at any time thereafter might have* or claim as heir at law, devisee, legatee or next of kin of his father, and apply the same to the payment of the said debt and interest. S., after the death of J. P. E., assigned to J. B. S. all her interest in the estate of J. P. E, who died intestate, seised of real and personal estate, and leaving him surviving J. E. his son and heir at law. *Held* that J. B. S. acquired an interest in the estate, by virtue of the said instrument and assignment, which in equity should be protected, and which constituted a right paramount to a claim asserted by a creditor of J. E., under attachment proceedings against the latter.

THIS is an appeal from a judgment entered upon the report of a referee. John P. Eycleshimer died on the 10th day of June, 1861, intestate, seised of real and personal estate, and leaving him surviving John L. D. Eycleshimer, his son and heir at law.

In September, 1858, the said John L. D. Eysleshimer, for the purpose of securing the payment of a sum of money, amounting to not less than $1500, owing to Caroline M. Sherman, executed and delivered to her an instrument in writing of which the following is a copy: "Know all men by these presents, that I, John L. D. Eyscleshimer, of the city of Janesville, in the state of Wisconsin, have made, constituted and appointed Caroline M. Sherman, of the county of Rensselaer and state of New York, my true and lawful attorney irrevocable, and coupled with an interest, for me

and in my name, place and stead to ask, demand, sue for and recover and receive all such interest, estate, property and effects, real and personal, as I now have; or at any time hereafter may have, or claim as heir at law, devisee, legatee or next of kin of my father John P. Eycleshimer, of said county of Rensselaer, and to sell, dispose of and convey all or any of said estate, property and effects for such prices and on such terms as she may deem proper, and to compromise and settle the estate of my said father, and any estate or interest I have or may hereafter have or claim therein, and to execute and deliver all such deeds, conveyances, releases, acquittances and papers as may be necessary or proper thereupon or thereafter, and to receive the proceeds and avails thereof, and of all my interest and estate therein, and all my estate, property and effects aforesaid, and apply the same respectively to the payment and discharge of $1500 and upwards, in which I am now justly indebted to her, the said Caroline M. Sherman, and the interest already accrued and thereafter to accrue thereon, and finally to do and perform all and every act and thing whatever requisite to be done in and about the premises, as fully as I might or could do if personally present, with full power to her of substitution and revocation, hereby ratifying and confirming all that my said attorney or her substitute shall lawfully do or cause to be done by virtue thereof.

In witness witness whereof, I have hereunto set my hand and seal the . . . day of September, A. D. 1858.

JOHN L. D. EYCLESHIMER." [L. S.]

The indebtedness of the said John L. D. Eycleshimer to the said Caroline M. Sherman, which constituted the consideration of the said transfer, was actual and bona fide. The said Caroline M. Sherman, on the 12th day of September, 1861, assigned to the defendant John B. Sherman, for the consideration of $1200, all her interest in said estate. On the 6th day of August, 1861, the defendant Jacob C. Eycleshimer, procured an attachment against the property of the

said John L. D. Eycleshimer, to secure and cause to be applied the share of the said John L. D. Eycleshimer in his father's estate, upon an indebtedness to him, the said Jacob C. from the said John L. On the 22d day of October, 1861, a judgment was obtained in the Supreme Court by the said Jacob C. Eycleshimer against the said John L. D. Eycleshimer. The said John B. Sherman claimed the said fund under the transfer to him from the said Caroline M. Sherman, and the said Jacob C. Eycleshimer claimed the same under his attachment and judgment. The referee decided that the said John B. Sherman was entitled to the fund, and judgment was entered accordingly; from which this appeal is taken.

*R. A. Parmenter*, for the appellant.

*J. Romeyn*, for the respondent.

*By the Court*, INGALLS, J. The determination of this appeal depends wholly upon the effect which is to be given to the instrument of September, 1858. That instrument is very comprehensive, irrevocably authorizing the said Caroline M. Sherman to demand, sue for, recover and receive all such interest, estate, property and effects, real and personal, which the said John L. D. Eycleshimer then had, *or at any time thereafter might have or claim as heir at law*, devisee, legatee or next of kin of his father, John P. Eycleshimer, and further authorized the said Caroline to settle with the estate, and to execute all necessary deeds, releases or papers, and to receive the proceeds and avails of any such interest and apply the same upon said indebtedness. All the right which the said John L. D. Eycleshimer possessed in the estate of his father at the time of the execution of the instrument was a bare possibility coupled with no interest, and was therefore not the subject of a grant. (2 *Hilliard on Real Prop.* 314. *Shep. Touchstone, p.* 239. 2 *Washburn on Real Property*,

636.) "A bare possibility of an interest which is uncertain, is not grantable, though a possibility coupled with a present interest may be granted. It has accordingly been held that a *grant by an heir apparent* of his interest in his ancestor's estate, so long as the ancestor is living, conveys nothing and is inoperative." (*Kent's Com. vol.* 4, *p.* 261.) "It is settled that all contingent estates of inheritance, as well as spring-ing and executory uses, *and possibilities coupled with an interest where the person to take is certain,* are transmissible by descent and devisable and assignable. If the person *be not ascertained, they are not then possibilities coupled with an interest,* and they can not be either devised or descend at the common law." (*See also Miller* v. *Emans,* 19 *N. Y. Rep.* 384, 398.) In *Jones* v. *Roe,* (3 *Durn. & East,* 93,) Lord Kenyon remarks : "There are two kinds of possibilities ; the one *a bare possibility, that which the heir has from the courtesy of the ancestor,* which is nothing more than hope of succession. Such a possibility undoubtedly is not the object of disposition, for if the heir were to dispose of it dur-ing the life of the ancestor, such disposition would be void." (*See also Jackson* v. *Waldron,* 13 *Wend.* 178.) A naked possibility may be released to one having some prior estate or interest in land. So also a grant with covenant of war-ranty may operate as an estoppel.

As no present or immediate estate or interest became vested in Caroline M. Sherman by virtue of such an instru-ment, her claim can only be supported on the ground that it is to be regarded as a contract which a court of equity would enforce after the death of John P. Eycleshimer ; for, until that event happened, the said Caroline M. had no interest in the estate, but simply a right under the contract. Was that such a right as a court of equity could and should protect and enforce ? In *Story's Eq. Jur.* (*vol.* 2, § 1040,) the author says : "So even the naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale or settlement, and in such case, if *made bona*

*fide, for a valuable consideration, it will be enforced in equity after the death of the ancestor,* not indeed as a trust attaching to the estate, but *as a right of contract."* (*See also note* 3 *to same page.*)

In *Spence's Eq. Jur.* (*vol.* 2, *p.* 865,) the author remarks : "A naked possibility or expectancy of an heir to his ancestor's estate, or even of the anticipated right of a person or next of kin, may be the subject of a contract in equity which will be equivalent to an assignment of the property, if, and when it shall fall into possession." Again : "An expectancy or contingent interest may be sold, and the Court of Chancery, after the event has happened, will enforce the sale." (*Id.*) Page 852 : "So the Court of Chancery has given effect to assignments of every kind of future and contingent interests and possibilities in real and personal property, if made for valuable consideration. An assignment, said Lord Hardwick, (speaking of cases of this kind,) always operates by way of *agreement or contract,* amounting in the consideration of this court to this, that one agrees with another to transfer or make good that right or interest, and like any other agreement the court will cause it to be specifically performed." (*See also page* 853, 854.)

In *Fonblanque's Equity,* page 213, the author says : "So, although a grant of a possibility is not good in law, yet a possibility of a trust in equity might be assigned ; so a covenant to settle lands of which he had only a possibility of descent should be carried into execution in equity, for the court does not bind the interest, but instead of damages at law, enforces the performance in specie." (*Note E, same page.*)

In *Hobson* v. *Trevor,* (2 *Peere Williams,* 191,) Trevor, the defendant, executed to the plaintiff Hobson a bond, whereby he obligated himself, in case the plaintiff would marry the daughter of the defendant, to settle upon the plaintiff one third part of the real estate, which should descend or come to the defendant by *and upon the decease of his father,*

to the use of the plaintiff for life, remainder to the use of the wife of the plaintiff, &c. The court decreed specific performance of the contract. The Lord Chancellor remarks: "This is an agreement made upon a valuable consideration, that of the marriage of a child, and therefore fit to be executed in equity."

*Beckley* v. *Newland,* (2 *Peere Williams,* 182.) Beckley and Newland married sisters, cousins and presumptive heirs of one Turges, and entered into an agreement by which they agreed that whatever should be given to either of them by Turges should be equally divided. Turges *subsequently* made his will, by which he left a large real and personal estate to Newland, and but a small amount of real estate to Beckley. The court directed specific performance of the agreement.

In *Carlton* v. *Leighton,* (3 *Merivale's Rep.* 667, *marg.*) although the Lord Chancellor remarks, "that the expectancy of an heir presumptive or apparent, (the fee simple being in the ancestor,) was not an interest or a possibility, nor was capable of being made the subject of an assignment or contract," yet in referring to the cases of *Hobson* v. *Trevor* and *Beckley* v. *Newland,* does not question the soundness of those decisions, but remarks: "That the cases cited were cases of covenant to settle or assign property which *should fall to the covenantor,* where the interest which passed by the covenant *was not an interest in the land, but a right under the contract.*"

Much of the apparent conflict in the cases upon this subject arises from a failure to distinguish between an attempt to convey or assign a present interest and merely a contract which, in express terms or by fair construction, is to take effect upon the happening of the event upon which the estate or interest is to vest in the party seeking to transfer the same. In the one case no interest is transferred, because the contemplated subject of the transfer does not exist, and therefore can not pass. In the other, the matter is executory, to take

effect when the right or interest vests in the party contracting to transfer the same.

The case of *Field* v. *Mayor of New York*, (2 *Seld.* 179,) in principle seems to support the theory of the respondent in this case. In that case Bell made an assignment to Garread, of bills that *might become due* to him for job printing, paper or stationery done or furnished the corporation of the city of New York, to the amount of $1500. Garread assigned to the plaintiff Field the said assignment and his interest under it. It appears that the work was done and the materials furnished to the corporation subsequent to the making the said assignment by Bell. *Hence the subject of the contract was a mere possibility*, as the work might never be performed, nor the materials furnished the corporation; and consequently no claim for compensation might ever arise. The court upheld the transfer, and remark: "The assignment of Bell to Garread was valid and *operative as an agreement* by which Garread and his assigns became entitled to receive payment of the bills in question when the same should become due to the amount indicated in the assignment, subject to the two prior assignments. It did not operate as an assignment *in presenti*, of the chose in action, because they were not in existence, but remained in possibility merely. A possibility, however, which the parties to the agreemeent expected would, and which did, after, ripen into an actual reality, upon which, by force of the agreement an equitable title to the benefit of the bills thus matured and due became vested in the assignee of Garread." "There was indeed no present, actual potential existence of the thing to which the assignment or grant related, and therefore it could not and did not operate *eo instanti* to pass the claim which was expected thereafter to accrue to Bell against the corporation; but it did nevertheless create an equity which would seize upon those claims as they should arise, and would continue so to operate until the object of the agreement was completed. Whatever doubts may have existed heretofore

Stover *v.* Eycleshimer.

on this subject, the better opinion, I think, now is, that courts of equity will support assignments not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into and it would not be against public policy to uphold them."

In the case at bar the instrument, by whatever name it may be designated, appears to have been entered into in good faith, and upon a valuable and adequate consideration, and no satisfactory reason is assigned, why in good conscience it should not be sustained. By the very terms of the instrument it points to the interest which should be *subsequently acquired* by the said John L. D. Eycleshimer in the estate of his father, and authorized the said Caroline M. Sherman to demand, sue for and receive the same, which she could not do until the death of his father. The fact that the instrument was, in part at least, a power of attorney, contemplating and authorizing the enforcement thereof, when the subject thereof should arise, leaves no reasonable doubt as to what was intended by the parties, nor as to the construction which it should receive. I am therefore of opinion that the respondent acquired an interest in the estate by virtue of the said instrument which in equity should be protected, and which constituted a right paramount to the claim asserted by the creditor of John L. D. Eycleshimer under the attachment proceedings.

The judgment must therefore be affirmed, with costs.

[ALBANY GENERAL TERM, May 1, 1865. *Hogeboom, Peckham* and *Ingalls,* Justices.]